1 Elliot J. Siegel (Bar No. 286798)
Elliot@KingSiegel.com
2 Melissa R. Rinehart (Bar No. 331315)
melissa@kingsiegel.com
3 **KING & SIEGEL LLP**
724 South Spring Street, Suite 201
4 Los Angeles, California 90014
tel: (213) 465-4802
5 fax: (213) 465-4803
6
7 Attorneys for Plaintiff and the Putative Class

8 **UNITED STATES DISTRICT COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 **Nicholas Morgan**, individually and on behalf of all similarly situated individuals, | CASE NO. 4:25-cv-06523-KAW |
| 11 | Assigned to: Magistrate Judge Kandis A. Westmore |
| Plaintiff, | |
| 12 | |
| vs. | **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** |
| 13 | |
| 14 **Signant Health Global LLC**, a Delaware corporation; and **Does 1-100**; | 1) **Illegal Noncompete Agreements;** |
| 15 | 2) **Failure to Pay Minimum Wage for All Hours Worked;** |
| Defendants. | 3) **Failure to Pay Earned Commission Wages;** |
| 16 | 4) **Failure to Pay Overtime Wages;** |
| 17 | 5) **Failure to Provide Meal Periods or Premium Pay in Lieu Thereof;** |
| 18 | 6) **Failure to Provide Rest Periods of Premium Pay in Lieu Thereof;** |
| 19 | 7) **Failure to Provide and Maintain Accurate Payroll Records;** |
| 20 | 8) **Failure to Timely Pay Wages Due;** |
| 21 | 9) **Failure to Timely Pay Commission Wages Due;** |
| 22 | 10) **PAGA Penalties (Labor Code §§ 2698, et seq.); and** |
| 23 | 11) **Violation of California Business & Professions Code §§ 17200, et seq. (Unlawful Business Practices)** |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | **<u>Jury Trial Requested</u>** |

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Nicholas Morgan, on behalf of himself and all other similarly situated current and former employees ("Class Members"), by and through his counsel of record, alleges as follows against Signant Health Global LLC ("Signant" or Defendants"):

## PARTIES

1.     At all times relevant to this complaint, Plaintiff Nicholas Morgan ("Plaintiff") was a resident of San Francisco County, California. Plaintiff was employed as a Sales Development Manager and then promoted to Director of Business Development by Signant Health Global LLC from approximately February 21, 2023 to November 6, 2024, earning a $78,000 annual salary plus commission, valued at a target payout of $48,000 annually. Plaintiff was subject to the policies and practices described in this Complaint at all times during his employment.

2.     Defendant Signant Health Global LLC ("Signant") is a Delaware limited liability company that provides information technology support services to pharmaceutical companies with two locations in the United States, four locations in Europe, and two locations in India. On information and belief, Signant has employed at least 75 hourly, non-exempt employees in a variety of capacities through the four years leading to this Complaint in its California operations. Signant is a foreign stock corporation registered and organized under the laws of Delaware. Signant's principal place of business is 785 Arbor Way, Blue Bell, PA 19422.

3.     Plaintiff is not currently aware of the names and true identities of defendant Does 1-100. Plaintiff reserves the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. Further references in this complaint to any named Defendants include the fictitiously named defendants.

4.     At all times alleged herein, each Defendant was an agent, servant, joint employer, employee, partner, and/or joint venture of every other Defendant and was acting within the scope of the Defendants' relationship. Moreover, the conduct of every Defendant was ratified by each other Defendant.

**VENUE AND JURISDICTION**

5.     The court has jurisdiction over all causes of action in this complaint pursuant to Article VI, § 10 of the California Constitution. No federal question is at issue; Plaintiff relies solely on California statutes and law, including the Labor Code and Business & Professions Code. Because Defendants employed remote employees living in San Francisco County and Defendant, via its employees, conducted substantial business in San Francisco County during all times relevant to the Complaint, Defendants are within the jurisdiction of the court for service of process. Moreover, Business & Professions Code § 17204 provides that any person acting on their own behalf may bring an action in any court of competent jurisdiction.

6.     Venue as to Defendants is proper in this Superior Court pursuant to California Code of Civil Procedure § 395. The unlawful acts alleged have directly affected Plaintiff, and similarly situated employees, in California and Defendants maintained and operated a California office in San Francisco County. Accordingly, this Court maintains appropriate jurisdiction over this dispute.

**CLASS ACTION ALLEGATIONS**

*Defendants Subject its Employees to Illegal Non-Compete Agreements*

7.     Upon hiring and as a condition of their employment, Defendants required Plaintiff and Class Members to sign non-compete agreements that were overbroad and invalid under Cal. Bus. & Prof. Code § 16600, *et seq*. Defendants required their employees to enter into employment contracts and/or required as a condition of employment that employees "shall not directly or indirectly...engage in activity which involves or could result in the actual or potential termination of the Company's relationship with or the solicitation, hiring, or engagement of any person or entity who is, at this time, or was, within the last twelve (12) months of Employee's employment within the Company, an employee, consultant, or independent contractor of the Company" while employed by Defendants "and for a period of twenty-four (24) months following the termination of Employee's employment for any reason (voluntary or involuntary)..."

8.     Additionally, Defendants required its employees to sign a restrictive covenant that stated, "Employee shall not use the Company's Confidential Information to directly or

indirectly…contact, call upon, solicit or otherwise accept business from, render services to, market services or products to, divert business from, and/or interfere with the Company's relationship or business with any of the Company's existing or prospective customers" while employed by Defendants "and following the termination of Employee's employment for any reason (voluntary or involuntary)…"

9.    These agreements ran afoul of Section 16600 and were invalid and unenforceable.

10.    Defendants also failed to provide individualized, written notice to Plaintiff and Class Members who had previously signed a non-compete agreement, as required by Cal. Bus. & Prof. Code § 16600.1(b), by the deadline of February 14, 2024.

*Defendants Misclassify its Sales Development Managers and Directors of Business Development as Exempt Employees*

11.    Plaintiff was employed by Defendants as a Sales Development Manager and then a Director of Business Development. Defendants misclassified Plaintiff and similarly situated Class Members as exempt to avoid complying with minimum wage, overtime, meal and rest periods, and other wage and hour laws and protections. Plaintiff's offer letter from Defendants, dated February 2, 2023, specifies that "[t]his position is considered an exempt position for purposes of applicable federal and state wage-hour laws, which means you will not be eligible for overtime pay for hours worked in excess of a 40-hour week."

12.    However, Plaintiff and the Class were *not* properly classified as exempt employees because they did not and do not primarily engage in job duties that meet the requirements to be considered an exempt employee under the executive employee exemption, administrative employee exemption, or professional employee exemption.

13.    Defendants knew that Plaintiff and Class Members were not correctly classified under the executive employee exemption, because they did not spend more than 50% of their time on work directly related to the management policies or general business operations of Defendants or Defendants' customers because Defendants tracked Plaintiff's and Class Members' activities through an internal database, meetings and updates, and other time reporting methods.

14.     Plaintiff and Class Members spent approximately 90% of their time performing tasks that were tracked by management, including logging phone calls, emails, and meetings in Sales Force, logging tasks performed throughout the day, logging call sheets and outreach calls, and participating in a weekly "pipeline call" wherein Plaintiff and Class Members reported to management about deals they closed, business opportunities, and future sales projections. Defendants cannot deny that it was aware of Plaintiff and Class Member's job duties, because Defendants' management, including Paul Richmond (Chief Commercial Officer), John Hughes (Vice President of Global Commercial Operations), and Deepika Gosain (Executive Director of Business Development), participated in these pipeline calls.

15.     While Plaintiff and similarly situated Class Members held job titles such as "Sales Development Managers" and "Directors of Business Development," Plaintiff and Class Members' job duties functioned more akin to that of an Account Executive who manages relationships with clients and solicits business from current and new clients. Plaintiff and Class Members' job titles are of no consequence, as the actual determination of exempt or nonexempt status must be based on the nature of the actual work performed by the individual employee.

16.     For the administrative exemption to apply to an employee, the employee must have authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

17.     Plaintiff and similarly situated Class Members lacked the freedom to exercise discretion and independent judgment regarding matters of significance. Similarly, Plaintiff and similarly situated Class Members were engaged in the production aspect of Defendants' business as opposed to the administrative functions. As such, Plaintiff and Class Members are not correctly classified as exempt under the administrative exemption.

18.     Plaintiff and Class Members also do not meet the criteria to qualify for a professional exemption, which requires a license or certificate issued by the State of California in the field of law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting. Nor are Plaintiff and Class Members primarily engaged in an occupation commonly recognized as a learned or artistic profession, such as music, writing, theater or the arts. To meet

SECOND AMENDED CLASS ACTION COMPLAINT

the requirements for a professional exemption, an advanced academic degree (above a bachelor level) is a standard prerequisite. Plaintiff and Class Members do not hold advanced degrees nor professional licenses or certificates issued by the State of California in the aforementioned fields. As such, Plaintiff and Class Members are not correctly classified as exempt under the professional exemption.

19.     Plaintiff and Class Members also do not meet the criteria to qualify for an inside sales or commissioned sales employee because Plaintiff and Class Members do not earn more than half of their total earnings from commissions. Such a condition must be met on a per pay period basis. Plaintiff and the Class also do not meet the requirements to be classified under the commission sales exemption because they work in a production role.

20.     As a result of the misclassification, Defendants failed to pay Plaintiff and Class members minimum and overtime wages for all hours worked and did not authorize or permit Plaintiff and Class Members to take 30-minute meal periods or provide paid 10-minute rest periods as required by law, among other wage and hour violations.

21.     Accordingly, Plaintiff brings this action on behalf of himself and as a class action on behalf of the following defined Class:

**Misclassification Class:**

*All persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, and in the role of Sales Development Manager and/or Directors of Business Development (or similar positions) in the State of California from the period of four years prior to the filing of the Action and the date of trial ("Misclassification Class").*

**Illegal Non-Complete Class**:

*All persons in California who signed a non-compete agreement issued by Defendant, whether the non-compete agreement was initially provided by Defendants upon hiring or subsequently thereafter while employed by Defendants ("Illegal Non-Complete Class").*

**Failure to Pay Commission Wages Class:**

*All persons who are or were Participants in the Signant Health Incentive Compensation Plan effective April 1, 2024, whether or not the Participant is a current or former employee, and who were not paid all commission wages due ("Failure to Pay Commission Wages Class").*

22.    As to each of the three (3) aforementioned classes, common methods of proof exist for determining these issues on a class-wide basis, including but not limited to, Defendants' employment records, payroll records, timesheets, policies, and disciplinary records.

23.    **Numerosity.**

a.    **Illegal Non-Compete Class**: Plaintiff is informed and believes that, during the class period, at least 75 Class Members were required to sign an illegal non-compete agreement in the state of California. The number of Class Members is sufficiently numerous that joinder of all members is impossible or impractical.

b.    **Misclassification Class**: Plaintiff is informed and believes that, during the class period, at least 75 Class Members have been employed as non-exempt employees by Defendants within the state of California. The number of Class Members is sufficiently numerous that joinder of all members is impossible or impractical.

c.    **Failure to Pay Commission Wages Class**: Plaintiff is informed and believes that, during the class period, at least 25 Class Members are or were Participants in the Signant Health Incentive Compensation Plan and were not paid all commission wages owed by Defendants. Plaintiff is informed and believes that the failure to pay all commission wages owed was caused by, in part, forfeiture terms and provisions in the Signant Health Incentive Compensation Plan that are procedurally and substantively unconscionable. The number of Class Members is sufficiently numerous that joinder of all members is impossible or impractical.

24.    **Typicality.** As to each of the three (3) aforementioned classes, Plaintiff's claims are typical of all respective Class Members. Plaintiff, like all other Class Members, was subjected to the policies and practices set forth above. Plaintiff's job duties were typical of Class Members in all relevant respects.

25. **Adequacy.** As to each of the three (3) aforementioned classes, there are no material conflicts between the claims of the representative Plaintiff and Class Members that would make class certification inappropriate. Plaintiff understands his obligation to inform the Court of any relationship, conflicts, or differences with any Class Member. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is invested in redressing Defendants' illegal practices on behalf of all Class Members. Moreover, Plaintiff has retained competent counsel experienced in both class action and employment litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement, and will vigorously assert the claims of all Class Members. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

26. **Existence and Predominance of Common Issues.** As to each of the three (3) classes, common questions of law and fact exist as to all Class Members and predominate over issues affecting individual Class Members, including, but not limited to:

a.      Whether Defendants have a common policy and/or practice of requiring employees to sign non-complete agreements;

b.      Whether Defendants have a common policy and/or practice of failing to pay commission wages when earned;

c.      Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt;

d.      Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under an administrative exemption;

e.      Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under an executive exemption;

f.      Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under a professional exemption;

g.      Whether Defendants have a common policy and/or practice of misclassifying non-

SECOND AMENDED CLASS ACTION COMPLAINT

exempt employees as exempt under an inside sales or commission exemption;

h.    Whether Defendants have a common policy and/or practice employing Sales Development Manager and/or Directors of Business Development, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not perform work directly related to management policies or general business operations of Defendant or Defendant's customers;

i.    Whether Defendants have a common policy and/or practice employing Sales Development Manager and/or Directors of Business Development, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not customarily and regularly exercise discretion and independent judgment;

j.    Whether Defendants have a common policy and/or practice employing Sales Development Manager and/or Directors of Business Development, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not regularly and directly assist a proprietor, or an employee employed in a bona fide executive or administrative capacity;

k.    Whether Defendants have a common policy and/or practice employing Sales Development Manager and/or Directors of Business Development, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not perform under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge;

l.    Whether Defendants have a common policy and/or practice employing Sales Development Manager and/or Directors of Business Development, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they are not primarily engaged in duties that meet the tests of the exemption;

m.    Whether Defendants unlawfully and/or willfully failed to compensate Plaintiff and Class Members at a minimum wage for all hours worked;

n.    Whether Defendants have a common policy and/or practice of failing to pay employees wages earned in violation of Labor Code section 227.3;

o.      Whether Defendants unlawfully and/or willfully deprived Plaintiff and Class Members of earned wages in violation of Labor Code section 227.3;

p.      Whether Defendants have a common policy and/or practice of failing to maintain accurate payroll records in the State of California;

q.      Whether Defendants unlawfully and/or willfully failed to maintain accurate payroll records in the State of California;

r.      Whether Defendants have a policy and/or practice of failing to provide accurate wage statements reflecting hours worked and wages earned to Plaintiff and Class Members;

s.      Whether Defendants unlawfully and/or willfully failed to provide accurate wage statements reflecting hours worked and wages earned to Plaintiff and Class Members;

t.      Whether Defendants have a policy and/or practice of failing to timely pay wages during employment in violation of Labor Code §§ 204, 210.

u.      Whether Defendants have a policy and/or practice of failing to pay Plaintiff and Class Members final wages owed upon termination, including commissions;

v.      Whether Defendants unlawfully and/or willfully failed to promptly pay compensation due to Plaintiff and Class Members upon termination of employment in violation of Labor Code §§ 201, 202, and 203;

w.      Whether Plaintiff and Class Members sustained damages as a result of any of the aforementioned violations, and, if so, the proper measure of those damages, including interest, penalties, costs, attorneys' fees, and equitable relief;

x.      Whether Defendants violated Cal. Bus. & Prof. Code §§16600, 16600.1, 16600.5 and Labor Code Section 432.5 by violating the above provisions of law;

y.      Whether Defendants violated Cal. Lab. Code §§ 1198.5(a)), 432, 226, and 1174 by violating the above provisions of law;

z.      Whether Defendants violated California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 by violating the above provisions of law;

aa.     Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, by violating the above provisions of law; and

bb.    Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., by treating Plaintiff and Class Members unfairly by failing to pay all regular and overtime wages earned, and failing to pay all compensation due upon discharge.

27.    **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute as to all three (3) classes, the damages suffered by individual Class Members, while substantial, are small compared to the burden and expense of individual prosecution of the complex and expensive litigation necessary to address Defendants' conduct. Even if Class Members themselves could afford individual litigation, the court system would be overwhelmed by individual lawsuits if all Class Members sought redress. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from the complex legal and factual issues of this case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; it allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff contemplates providing individual notice to members of the Class through Defendants' records.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### *Cal. Bus. & Prof. Code §§16600, 16600.1, 16600.5*

### *and Labor Code Section 432.5*

### Illegal Noncompete Agreements

### (Plaintiff and Illegal Non-Complete Class Against Defendants)

28.    Plaintiff and Class incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

29.    "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

SECOND AMENDED CLASS ACTION COMPLAINT

30.    As of January 1, 2024, under Section 16600.1, it is illegal for an employer "to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement" Cal. Bus. & Prof. Code § 16600.1.

31.    Further, employers are required under Section 16600.1 to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022, whose contracts include a barred non-compete clause or agreement.

32.    All noncompete clauses or agreements covered under Section 16600-16600.5 are void and an impacted "employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." Cal. Bus. & Prof. Code § 16600.5. A prevailing employee is also entitled to recover reasonable attorney's fees and costs. *Id.*

33.    Separately, under Labor Code § 432.5, "[n]o employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law." Cal. Lab. Code § 432.5.

34.    Defendants required their employees to enter into employment contracts and/or required as a condition of employment that "shall not directly or indirectly...engage in activity which involves or could result in the actual or potential termination of the Company's relationship with or the solicitation, hiring, or engagement of any person or entity who is, at this time, or was, within the last twelve (12) months of Employee's employment within the Company, an employee, consultant, or independent contractor of the Company" while employed by Defendants "and for a period of twenty-four (24) months following the termination of Employee's employment for any reason (voluntary or involuntary)..."

35.    Additionally, Defendants required its employees to sign a restrictive covenant that stated, "Employee shall not use the Company's Confidential Information to directly or indirectly...contact, call upon, solicit or otherwise accept business from, render services to, market services or products to, divert business from, and/or interfere with the Company's relationship or business with any of the Company's existing or prospective customers" while

1  employed by Defendants "and following the termination of Employee's employment for any

2  reason (voluntary or involuntary)..."

3      36.    These requirements violate Cal. Bus. & Prof. Code § 16600 and are not covered by

4  any exemption to that chapter.

5      37.    Defendants also failed to provide a curative notice "in the form of a written

6  individualized communication" to all Class Members employed after January 1, 2024 in which

7  the notified employees that these requirements were void.

8      38.    Defendants' actions violated Cal. Bus. & Prof. Code §§ 16600, 16600.1, and

9  16600.5. Class Members are entitled to injunctive relief and actual damages, and legal fees to

10  remedy these violations.

## SECOND CAUSE OF ACTION

### *California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198*

### *Unpaid Wages*

### **(Plaintiff and Misclassification Class Against Defendants)**

15  39.    Plaintiff repeats and incorporates by reference all allegations contained in the

16  preceding paragraphs as if fully set forth herein.

17  40.    California law requires employers to compensate employees for all time that an

18  employee is "suffered or permitted to work," which includes all time "when any employer

19  'directs, commands or restrains' an employee." *See, e.g., Morillion v. Royal Packing Co.*, 22 Cal.

20  4th 575, 583 (2000), as modified (May 10, 2000); *see also* Code Regs. tit. 8, § 11070 ("'Hours

21  worked' means the time during which an employee is subject to the control of an employer and

22  includes all the time the employee is suffered or permitted to work, whether or not required to

23  do so.").

24  41.    In order to meet Defendants' production demands, upon information and belief,

25  Misclassification Class Members, like Plaintiff, worked significantly more than 40 hours a week

26  but were not compensated for this time because they were paid a flat salary based on 40 hours

27  of work a week. *See* Lab. Code § 515(d)(1).

28  42.    Defendants consistently and as a matter of common policy and practice failed to

SECOND AMENDED CLASS ACTION COMPLAINT

1  pay at least minimum wages for all hours worked by virtue of their misclassification.

2      43.    Defendants consistently and as a matter of common policy and practice failed to

3  pay overtime wages for all hours worked by virtue of their misclassification.

4      44.    As a result of Defendants' failure and refusal to comply with California

5  law, Plaintiff and Class Members are entitled to recover actual and liquidated damages for the

6  unpaid time, plus injunctive relief and reasonable attorney's fees and costs. Lab. Code § 1194.

7                            **THIRD CAUSE OF ACTION**

8              ***California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198***

9                                   ***Unpaid Wages***

10          **(Plaintiff and Unpaid Commission Class Against Defendants)**

11     45.     Plaintiff repeats and incorporates by reference all allegations contained in the

12  preceding paragraphs as if fully set forth herein.

13     46.    In addition to the foregoing violations, Defendants had a common policy and

14  practice of refusing to pay earned commissions to Class Members even where Class Members

15  had performed all conditions to earning the commission prior to their departure. *Schachter v.*

16  *Citigroup, Inc.*, 47 Cal. 4th 610, 622 (2009) ("[I]t has long been the rule that termination

17  (whether voluntary or involuntary) does not necessarily impede an employee's right to receive a

18  commission where no other action is required on the part of the employee to complete the sale

19  leading to the commission payment.").

20     47.    Plaintiff and Class Members were not provided an opportunity to negotiate the

21  terms and conditions of the Signant Health Incentive Compensation Plan, which became

22  effective as of April 1, 2024, with Defendants. Rather, the Signant Health Incentive

23  Compensation Plan was given by Defendants on a take-it-or-leave-it basis. Upon information

24  and belief, a refusal to agree to the plan terms would result in the Class Members termination or

25  reclassification. Moreover, Defendants reserved the right to unilaterally change the terms of the

26  plan without notice to Plaintiff and Class Members ("Plan Administrator has the maximum

27  discretion permitted by law to interpret, administer, change, modify, or delete the rules,

28  procedures, and benefits contained in the Plan at ay time with or without notice"). This absence

of bargaining power renders the Plan procedurally unconscionable. *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 793 (2012) ("A nonnegotiable contract of adhesion in the employment context is procedurally unconscionable"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001) (same).

48.    Defendants' Signant Health Incentive Compensation Plan is also substantively unconscionable.

49.    Defendants state that "any incentive [bonus] *may* be adjusted (including reduced to zero) for any reason affecting the value of the business on which the incentive is based or calculated…" regardless of the booking value.

50.    Defendants' Signant Health Incentive Compensation Plan states that "Except…as may be  required by applicable law, if a Participant's employment terminates for any reason prior to the Payment Date, all of the Participant's rights to any Award not yet paid in respect of either the current Performance Period or a previous Performance Period shall cease." While the Plan allows for a dispute resolution process, the decision is made by Defendants' own "Plan Administrator" and "[t]he decision of the Plan Administrator shall be final, binding, and conclusive on all parties, to the extent permitted by law." While Defendants contend that "Nothing in the Plan is intended to avoid any legal requirements or waive any rights that cannot be waived as a matter of law," Defendant's Plan was drafted by Defendants, is entirely one-sided, and does not allow Plaintiff any outside redress.

51.    Demonstrating its unconscionability further, the Plan states "Unless otherwise expressly set forth in an employment agreement signed by the Company and a Participant, a Participant shall not have any right to any Award under the Plan *until such Award has been paid* to such Participant." (emphasis added) Similarly, "[t]he Plan Administrator may, at any time, suspend, or terminate the Plan, in whole or in part." While the Plan imposes limitations on Plaintiff and Class Members' rights under the Plan, Defendants expressly preserve their rights to offset or recover commissions. The Plan states "Recovery of Payments and Adjustments to Payments Due. To the extent permitted by applicable law, the Company reserves the right to offset an Award due or recover a portion of or all of any Award made by the Company for a

Performance Period in the event of a cancellation of a contract after the Payment Date, in the event of delays prior to the recognition of revenue, or for any other reason outlined in Section 6 and/or Section 7."

52.    When Defendants' Sales Development Managers and Directors of Business Development obtained contracts from clients, the clients typically paid 60%-70% of the contract value within the first quarter after its execution. Although these contracts concerned clinical trial studies lasting approximately 18 months to 3 years, clients paid approximately 60% of the contract's value within the first quarter after it was signed.

53.    Despite receiving 60% of the contract's value upon its execution, Defendants forced Plaintiff and Class Members to wait one (1) year to receive their commissions. Once a contract was signed and the commissions was "earned" (as Plaintiff and Class Members had no further obligatory tasks to perform related to the contract), Defendants paid the earned bonus over the subsequent four quarters.

54.    Such a policy and procedure ensures that employees who are Participants in Defendants' Signant Health Incentive Compensation Plan *will not* receive commissions that have been earned upon their separation or termination from Defendants.

55.    Such a policy also results in Defendants' failure to pay all wages owed to Plaintiff and similarly situated Class Members who were Participants in Defendants' Signant Health Incentive Compensation Plan.

56.    As a result of Defendants' failure and refusal to comply with California law, Plaintiff and Class Members are entitled to recover actual and liquidated damages for the unpaid time, plus injunctive relief and reasonable attorney's fees and costs. Lab. Code § 1194.

## **FOURTH CAUSE OF ACTION**

### ***California Labor Code §§ 510 and 1198***

### ***Failure to Pay Overtime Wages***

### **(Plaintiff and Misclassification Class Against Defendants)**

57.    Plaintiff and Misclassification Class repeat, replead, and incorporate by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

58.     Plaintiff and Class Members who work more than eight hours in a day or more than forty hours in a workweek are to be paid at the rate of time and one-half (1½) for all hours worked in excess of eight hours in a day or more than forty hours in a workweek. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including commissions, sick pay, non-discretionary bonuses and incentive pay. *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 573 (2018), as modified (Apr. 25, 2018).

59.     Throughout the Class Period, Plaintiff and other Class Members were not paid overtime premiums for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, in excess of eight hours on the seventh consecutive day of work in a workweek, and in excess of forty hours in a week, because all hours worked were not recorded or not compensated as a direct consequence of their misclassification.[1]

60.     By virtue of Plaintiff and Class Members' misclassification, Defendants consistently and as a matter of common policy and practice failed to pay Plaintiff and Misclassification Class Members all overtime wages to which they were entitled.

61.     Additionally, upon information and belief, Defendants failed to pay all overtime at the correct rate due to a failure to incorporate non-discretionary and production bonuses into the regular rate when calculating the applicable overtime rate.

62.     Pursuant to Labor Code § 1194, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

---

[1] "Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary." Lab. Code § 515(d)(1).

**FIFTH CAUSE OF ACTION**

***Failure to Provide Meal Periods or Premium Pay in Lieu Thereof***

**Lab. Code §§ §§ 226.7, 512(a), and 1198**

**(Plaintiff and Misclassification Class Against Defendants)**

63.     Plaintiff repeats, repleads, and incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

64.     At all times relevant to this complaint, Defendants knew they were obligated to provide legally-compliant meal breaks to its non-exempt employees pursuant to Labor Code §§ 512 and 226.7. Labor Code § 512(a) states in pertinent part: "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

65.     Labor Code section 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC. "An off-duty meal period, therefore, is one in which the employee is relieved of all duty during the 30-minute meal period...an employer's obligation is to provide an off-duty meal period: an uninterrupted 30–minute period during which the employee is relieved of all duty." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1035 (2012).

66.     Defendants denied their non-exempt employees the opportunity to take compliant 30-minute meal periods in accordance with these mandates because they were misclassified as exempt employees and were not authorized under Defendant's written policies to take 30-minute breaks free of employer control or relieved of all duties during such breaks.

67.     Accordingly, Plaintiff and Class Members were uniformly denied meal periods as a result of Defendants' formal policies and practices. By failing to consistently provide uninterrupted, off-duty 30-minute meal periods, Defendants violated the Labor Code as to Plaintiff and Class Members.

68.     Pursuant to Labor Code § 226.7(b), Plaintiff and Class Members are entitled to

recover from Defendants an additional hour of pay at their regular rates of pay for each shift in which a required meal period was not provided.

## SIXTH CAUSE OF ACTION

### *Failure to Provide Rest Periods of Premium Pay in Lieu Thereof*

### Lab. Code §§ 226.7 and 1198

### (Plaintiff and Misclassification Class Against Defendants)

69.    Plaintiff and Class repeat, replead, and incorporate by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

70.    At all times relevant to this complaint, Defendants knew they were obligated to provide compliant rest breaks to its non-exempt employees pursuant to Labor Code § 226.7.

71.    Labor Code § 226.7 provides:

(a)    No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b)    If any employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

72.    Labor Code § 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any rest or meal period mandated by an applicable order of the IWC. Employers must authorize and permit employees to be relieved of all duty during their rest and meal periods: "A rest period, in short, must be a period of rest."[2] *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 834 (2016).

73.    Employees must also be free to leave the employer's premises during their rest period. *See id.* at 270 ("In the context of a 10-minute break that employers must provide during the work period, a broad and intrusive degree of control exists when an employer requires employees to remain on call and respond during breaks. An employee on call cannot take a brief walk—five minutes out, five minutes back—if at the farthest extent of the walk he or she is not in

a position to respond. Employees similarly cannot use their 10 minutes to take care of other personal matters that require truly uninterrupted time."); *see also* Department of Industrial Relations, "Rest Periods," *available at https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm* ("Q. Can my employer require that I stay on the work premises during my rest period? A. No, your employer cannot impose any restraints not inherent in the rest period requirement itself.").

74.     On information and belief, Defendants failed to authorize or permit all required compliant paid rest periods for shifts between 3.5 and ten hours as a result of their misclassification of Class Members—who were misclassified as exempt employees and were not authorized under Defendant's written policies to take rest periods, and were not compensated for any that they may have taken.

75.     As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff and Class Members have sustained damages, including lost compensation resulting from missed or non-compliant rest periods, in an amount to be established at trial.

76.     Pursuant to Labor Code § 226.7(b), Plaintiff and Class Members are entitled to recover from Defendants an additional hour of pay at their regular rates of pay for each shift in which a required meal period was not provided.

### SEVENTH CAUSE OF ACTION

### *Failure to Provide and Maintain Accurate Employment Records*

### Lab. Code §§ 226, 432, 1174, and 1198.5(a)

### (Plaintiff and All Classes Against Defendants)

77.     Plaintiff and all Class Members repeat and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

78.     Accurate Records. Labor Code § 226 requires employers to furnish employees with an accurate, itemized statement in writing showing, among other things, (1) gross wages earned; (2) total hours worked by the employee (for hourly-paid, non-exempt employees); (3) net wages earned; and (4) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

79.     At all times relevant to this complaint, Defendants' failure to pay premium wages

1  for missed meal and rest periods and minimum and/or overtime wages for work-off-the-clock

2  work rendered Class Members' wage statements inaccurate by failing to accurately reflect gross

3  and net wages earned.

4      80.    <u>Injury.</u> Defendants knowingly and intentionally failed to comply with Labor Code

5  § 226, causing injury and damages to Plaintiff and Class Members. Plaintiff and all those

6  similarly situated were injured by these failures because, among other things, they were confused

7  about whether they were paid properly and/or they were misinformed about how much

8  compensation was owed.

9      81.    <u>Relief.</u> Labor Code § 226(e)(1) provides that an employee suffering injury as a

10  result of not being provided with an accurate itemized wage statement is entitled to recover the

11  greater of all actual damages suffered or fifty ($50) dollars for the initial violation and one

12  hundred ($100) dollars for each subsequent violation, up to $4,000. Pursuant to Labor Code §§

13  226(e) and (g), Plaintiff and all others similarly situated are entitled to injunctive relief to ensure

14  Defendants' compliance with Labor Code § 226, as well as attorney's fees and costs of suit.

15      82.    <u>Provision of Records</u>. Labor Code § 226 provides that employers "shall afford

16  current and former employees the right to inspect or receive a copy of records pertaining to their

17  employment, upon reasonable request to the employer" and that employers "shall comply with

18  the request as soon as practicable, but no later than 21 calendar days from the date of the

19  request."

20      83.    Labor Code § 1198.5 provides that "[u]pon a written request from a current or

21  former employee, or his or her representative, the employer *shall* also provide a copy of the

22  personnel records, at a charge not to exceed the actual cost of reproduction, not later than 30

23  calendar days from the date the employer receives the request . . . ."

24      84.    Labor Code § 432 provides that "If an employee or applicant signs any instrument

25  relating to the obtaining or holding of employment, he shall be given a copy of the instrument

26  upon request."

27      85.    Labor Code § 1174 requires employers to maintain payroll records showing the

28  hours worked daily by all employees, for a time not less than three years. Industrial Wage Order

No. 7, § 7 requires that an employer maintain "time records showing when the employee begins and ends each work period" and made those records available to any employee upon reasonable request. *Id.*

86.    Labor Code § 226(f) and (h) sets forth that if an employer fails to permit a current or former employee to inspect or copy records required to be kept under that section within 21 days of a request to inspect, that employer is liable to the employee for a penalty of $750, and the employee is entitled to bring an action for injunctive relief to enforce compliance and shall be entitled to an award of costs and reasonable attorney's fees in doing so. Labor Code § 1198.5(k) sets forth that if an employer fails to permit a current or former employee to inspect or copy records relating to the employee's performance or to any grievance concerning the employee within 30 days of a request to inspect, that employer is liable to the employee for a penalty of $750, and the employee is entitled to bring an action for injunctive relief to enforce compliance and shall be entitled to an award of costs and reasonable attorney's fees in doing so.

87.    Upon information and belief, Defendant has a policy and practice of denying requests for employee records to their current and former employees in California and violates Labor Code §§ 226, 432, 1174, and 1198.5 and the Wage Orders.  For example, Mr. Morgan, through counsel, requested copies of his records kept in accordance with Labor Code §§ 226, 432, and 1198.5 by certified letter on December 30, 2024. Defendants did not respond or provide Plaintiff's records within the statutory timeframe set forth in Labor Code §§ 1198.5(a)), 432, 226, and 1174.

88.    Defendants' policies and practices are in violation of Labor Code 1198.5(a) and (b)(1). Plaintiffs and similarly situated Class Members are entitled to a $750.00 penalty plus reasonable attorney's fees and costs, and injunctive relief, from Defendants for this violation per Labor Code 1198.5(k) and (l).

# EIGHTH CAUSE OF ACTION

## Cal. Lab. Code §§ 201, 202, and 203

## Failure to Timely Pay Wages

### (Plaintiff and Misclassification Class Against Defendants)

89.  Plaintiff and all Class Members incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

90.  Labor Code § 201 provides, in relevant part, that:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages[3] shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of quitting.

42. Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with § 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for

---

[3] Labor Code § 200 defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." "Labor" is defined as "labor, work, or service . . . if the labor to be paid for is performed personally by the person demanding payment." Additionally, in *Naranjo v. Spectrum Security Services, Inc.,* 13 Cal. 5th 93 (2022), the California Supreme Court recently held that failure to pay premiums for violating the California Labor Code's meal and rest break provisions constitutes "wages" for purposes of waiting time penalties.

1    more than 30 days.

2    91.    Labor Code § 204 provides that all wages, other than those mentioned in Section

3    201 and 202, are due and payable twice during each calendar month, on days designated in

4    advance by the employer as regular paydays.

5    92.    Failure to Timely Pay Wages Due. As set forth above, Defendants failed to timely

6    pay the minimum wages, overtime wages, and meal and rest period premiums resulting from its

7    deficient timekeeping and meal and rest period policies.

8    93.    Relief. Defendants' failure to pay Plaintiff and those Class Members wages on their

9    regularly scheduled pay dates subjects Defends to civil penalties in the amount of $100 per

10    employee per initial violation and $200 per employee for every subsequent violation of Labor

11    Code § 204 pursuant to Labor Code § 210.

12    94.    Failure to Pay Upon Termination. Plaintiff and many Class Members have left

13    Defendants' employ during the Class Period. As discussed above, Defendants knowingly failed

14    to pay Plaintiff and Class Members all earned wages upon termination. Instead, Defendants

15    willfully and intentionally refused to pay the earned rest and/or meal period premiums and

16    earned minimum/overtime wages as alleged herein to Plaintiff and Class Members in violation

17    of Labor Code §§ 201 and 202.

18    95.    Defendants' policy and practice regarding commissions also resulted in the

19    withholding of commissions that have been earned from Commission Class Members upon their

20    separation or termination from Defendants. Such a policy also results in Defendants' failure to

21    pay all wages owed to Plaintiff and similarly situated Class Members who were Participants in

22    Defendants' Signant Health Incentive Compensation Plan.

23    96.    Relief. Defendants' failure to pay Plaintiff and those Class Members who are no

24    longer employed by Defendants their wages earned and unpaid at the time of discharge, or

25    within seventy-two (72) hours of their leaving Defendants' employment, violates Labor Code

26    §§ 201 and 202. Plaintiff and Class Members are therefore entitled to recover from Defendants

27    the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a

28    30-day maximum penalty under Labor Code § 203.

**NINTH CAUSE OF ACTION**

*Cal. Lab. Code §§ 201, 202, and 203*

*Failure to Timely Pay Wages*

**(Plaintiff and Unpaid Commission Class Against Defendants)**

97.    Plaintiff and all Class Members incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

98.    <u>Failure to Timely Pay Wages Due.</u> As set forth above, Defendants failed to timely pay Plaintiff and other Class Members earned commissions. Defendants' policy and practice regarding commissions also resulted in the withholding of commissions that have been earned from Commission Class Members upon their separation or termination from Defendants. Such a policy also results in Defendants' failure to pay all wages owed to Plaintiff and similarly situated Class Members who were Participants in Defendants' Signant Health Incentive Compensation Plan.

99.    <u>Relief.</u> Defendants' failure to pay Plaintiff and those Class Members wages on their regularly scheduled pay dates subjects Defends to civil penalties in the amount of $100 per employee per initial violation and $200 per employee for every subsequent violation of Labor Code § 204 pursuant to Labor Code § 210.

100.    <u>Failure to Pay Upon Termination.</u> Plaintiff and many Class Members have left Defendants' employ during the Class Period. As discussed above, Defendants knowingly failed to pay Plaintiff and Class Members all earned wages upon termination. Instead, Defendants willfully and intentionally refused to pay the earned commissions wages as alleged herein to Plaintiff and Class Members in violation of Labor Code §§ 201 and 202.

101.    <u>Relief.</u> Defendants' failure to pay Plaintiff and those Class Members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employment, violates Labor Code §§ 201 and 202. Plaintiff and Class Members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a 30-day maximum penalty under Labor Code § 203.

SECOND AMENDED CLASS ACTION COMPLAINT

**TENTH CAUSE OF ACTION**

*California Labor Code §2699, et seq.*

*Private Attorneys General Act ("PAGA") Penalties*

**(Plaintiff and Aggrieved Employees Against Defendants)**

102.    Plaintiff repeats and incorporate by reference every allegation in this complaint as if fully set forth herein.

103.    Standing. Under the California Private Attorneys General Act ("PAGA"), Labor Code § 2698, et seq., an aggrieved employee may bring a representative action as a private attorney general, on behalf of himself and other current or former employees to recover penalties for an employer's violations of the Labor Code and IWC Wage Orders.

104.    Plaintiff, by nature of his employment with Defendants, is an aggrieved employee for purposes of this Complaint with standing to bring an action under PAGA.

105.    Plaintiff, on behalf the State of California and all Aggrieved Employees, brings this representative action pursuant to Labor Code § 2699, et seq., seeking civil penalties for Defendants' violation of Labor Code §§ 201-204, 210, 226, 226.7, and 510, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198 as described herein, plus attorneys' fees and costs.

106.    Entitlement to Penalties. Per Labor Code § 2699(f), and based on the foregoing, Plaintiff, the State, and Aggrieved Employees are entitled to civil penalties in an amount to be shown at trial subject to the following formula: (a) In an amount set forth as a civil penalty in the underlying statute; or (b) $100 per initial violation per employee per pay period, and $200 for each subsequent violation per employee per pay period.

107.    These penalties shall be allocated sixty-five percent to the Labor and Workforce Development Agency and thirty-five percent to the aggrieved employees.

108.    These penalties may be "stacked" separately for each of Defendants' violations of the Labor Code, subject to the exception enumerated in Labor Code section 2698(i). *See, e.g.*, Hernandez v. Towne Park, Ltd., No. CV 12-02972, 2012 WL 2373372, at *17 n.77 (C.D. Cal. June 22, 2012); *see also O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2016 WL 3548370, at *7 (N.D. Cal. June 30, 2016); Labor Code § 2698(i).

109.    <u>Predicate Violations</u>. The Aggrieved Employees are entitled to civil penalties under PAGA arising from the above-mentioned predicate violations of the Labor Code, as well as the applicable Wage Order, including but not limited to: Lab. Code §§ 201-204, 210, 226, 226.3, 226.7, 510, 512, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, and 2802, plus reasonable attorneys' fees and costs.

110.    <u>Procedural Requirements Met</u>. On June 24, 2025, Plaintiff electronically filed a notice of claims with the LWDA and sent a copy to Defendants by certified mail. Plaintiff did not receive notice from the LWDA that it would be investing the complaint, nor did Plaintiff receive notice from the LWDA that it was declining to investigate, within the 65-day period under Labor Code § 2699.3. On December 30, 2024, the sixty-five-day notice period expired as to all defendants. Since the LWDA took no steps within the prescribed time to intervene, Plaintiff has exhausted all required administrative remedies required to seek penalties under PAGA. See Lab. Code § 2699.3(a)(2). A true and correct copy of Plaintiff's PAGA Notice is attached herein as **Exhibit A**.

## <u>ELEVENTH CAUSE OF ACTION</u>

### *California Business & Professions Code §§ 17200, et seq.*

### *Unlawful Business Practices*

### **(Plaintiff and All Classes Against Defendants)**

43.    Plaintiff and Class Members repeat and incorporate by reference every allegation in this complaint as if fully set forth herein.

44.    Defendants are "persons" as defined by California Business & Professions Code § 17201, as they are a natural person, corporations, firms, partnerships, joint stock companies, and/or associations.

45.    <u>Unlawful Business Practices</u>. Defendants' knowing violations of the Labor Code constitutes an unlawful business practice as set forth in Business & Professions Code § 17200, et seq.

46.    Defendants' failure to abide by the laws discussed herein provided Defendants an unfair advantage over their competitors at the expense of their workers. Instead, Defendants

SECOND AMENDED CLASS ACTION COMPLAINT

1  cut corners in the name of higher profits and at the expense of employee well-being.

2  Defendants' actions thereby constitute an unfair, fraudulent, and/or unlawful business practice

3  under Business & Professions Code § 17200, et seq.

4         47.   <u>Relief</u>. Plaintiff brings this cause of action seeking equitable and injunctive relief

5  to stop Defendant's willful and ongoing misconduct, and to seek restitution of the amounts

6  Defendants acquired through the unfair, unlawful, and fraudulent business practices described

7  herein. In addition, Plaintiff seeks an award of costs and attorneys' fees pursuant to California

8  Code of Civil Procedure § 1021.5.

9  **DEMAND FOR JURY TRIAL**

10        Pursuant to California Code of Civil Procedure § 631, Plaintiff demands a trial by jury

11  on all issues so triable.

12  **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiff respectfully prays judgment as follows:

14      A.     For an Order:

15          a.  Certifying the Classes;

16          b.  Appointing Plaintiff as representative of the Classes;

17          c.  Appointing Plaintiff's counsel as Class Counsel;

18      B.     For actual and liquidated damages according to proof at trial;

19      C.     For statutory and civil penalties and special damages, according to proof at trial;

20      D.     For pre- and post-judgment interest on monetary damages;

21      E.     For preliminary and permanent injunctive relief;

22      F.     For reasonable attorney's fees and costs and expert fees and costs as allowed by

23          law; and

24      G.     For such other relief as this Court deems just and proper.

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT

Dated: January 12, 2026

Respectfully submitted,

**KING & SIEGEL LLP**

By: *Elliot J. Siegel*
Elliot J. Siegel, Esq.
Attorneys for Plaintiff and the Putative Class

SECOND AMENDED CLASS ACTION COMPLAINT